T.C. Summary Opinion 2003-98

UNITED STATES TAX COURT

DAVID M. FUGITT AND AUDREY J. FUGITT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14116-01S.                    Filed July 23, 2003.

David M. Fugitt and Audrey J. Fugitt, pro sese.

<u>Monica J. Miller</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 1999, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for 1999 in the amount of $8,180, as well as an accuracy-related penalty under section 6662(a) in the amount of $1,636.[2]

The issues for decision are:

(1) Whether petitioners failed to report self-employment income in the amount of $19,125.  We hold that they did.

(2) Whether petitioners are liable for the accuracy-related penalty under section 6662(a).  We hold that they are.

Adjustments relating to petitioners' earned income credit and self-employment tax are purely mechanical matters, the resolution of which is dependent on our disposition of the first disputed issue.

Background

Some of the facts have been stipulated, and they are so found.  Petitioners resided in New Smyrna Beach, Florida, at the time that their petition was filed with the Court.

Petitioners are a married couple.  Petitioners have two sons who were schoolage and living at home throughout the taxable year in issue.

Prior to 1999, petitioner David M. Fugitt (Mr. Fugitt) had primarily worked selling used automobiles.  During 1999, Mr. Fugitt worked as a recreational vehicle salesman for Southeast RV

---

[2]  All amounts have been rounded.

Liquidators (Southeast).  Southeast is a recreational vehicle broker owned by Roger Ruess (Mr. Ruess).  Petitioner worked for Southeast throughout Florida for 106 days during 1999.

For a portion of 1999, Southeast conducted temporary offsite recreational vehicle sales shows (RV shows) on behalf of Revels Nationwide RV (Revels).[3]  Southeast would set up the RV shows and sell recreational vehicles on behalf of Revels.  The RV shows typically lasted between 3 to 5 days.  Revels did not participate in the sales at the RV shows.[4]  At the end of each RV show, Mr. Ruess delivered all sales contracts to Revels.

Southeast's salesmen sold recreational vehicles to customers at the RV shows.  At the time of each sale, the salesman prepared a worksheet.  James Osburn (Mr. Osburn), a subcontractor who worked for Mr. Ruess, generally prepared the sales contract from the salesman's worksheet.  Either Mr. Ruess or Mr. Osburn approved each sale negotiated by a salesman.

Mr. Osburn maintained a computer database of the sales made by each salesman.  The information from each sales contract was contemporaneously recorded in the computer database for the appropriate salesman at the time of each sale.

---

[3]  In 1999, Revels sold recreational vehicles at its sales lot located in Jacksonville, Florida, and at RV shows held throughout Florida by Southeast.

[4]  In situations where customers offered less than the cost of the recreational vehicle, Revels was contacted to approve the sale.

Southeast was generally paid a 30-percent sales commission by Revels on each sale made at an RV show. The sales commission was paid on the gross profit from each sale.[5]

Salesmen were generally paid a sales commission of 20-percent of the gross profit on each of their sales, or two-thirds of the commission paid by Revels to Southeast. However, if a sale resulted in a loss; i.e., the cost of the recreational vehicle was greater than the sales price, the salesman was paid a "flat fee" sales commission. Prior to each RV show, Revels provided Southeast with the cost of each recreational vehicle. Southeast, in turn, provided each salesman with the cost of each recreational vehicle. Based on the information provided by Revels and the sales contract, Mr. Osburn determined the amount of sales commission earned by a salesman on each recreational vehicle sold. Sales commissions were paid by Southeast to the salesmen in cash after Southeast delivered the sales contracts to Revels and received its 30 percent commission.

In addition to the sales commissions, Southeast paid each salesman a $25 per diem payment for each day a salesman was at an RV show. The salesman was provided the per diem payment up front in cash, on either a daily basis or for the entire duration of an RV show. The salesman was not required to account for his

---

[5] The gross profit was generally the selling price of the recreational vehicle less its cost.

expenses, nor did any salesman do so.  In addition, Southeast directly paid the motel expenses for each salesman.

Southeast issued to Mr. Fugitt a Form 1099 for the taxable year 1999 in the amount of $19,125.  The amount reported on the Form 1099 consisted of total sales commissions and per diem payments of $16,475 and $2,650, respectively.

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for 1999.  Petitioners attached to their return two Schedules C-EZ, Net Profit From Business, relating to the sale of used car and used merchandise.  On the Schedules C-EZ, petitioners reported gross receipts totaling $7,854.  Petitioners did not report on their return any of the amount reported on the Form 1099 issued by Southeast.

In the notice of deficiency, respondent determined that petitioners failed to report self-employment income of $19,125 for the taxable year 1999.  Respondent also determined that petitioners were liable for an accuracy-related penalty due to substantial understatement of tax under section 6662(a)(1) and (d)(1).

At trial, Mr. Fugitt testified that he regarded his arrangement with Southeast as akin to going to school to learn how to sell recreational vehicles.  Although he conceded that he was paid sales commissions, he estimated the amount to be "about $900".  Mr. Fugitt also conceded that he received total per diem

payments from Southeast during 1999 of "more than $1,000. He admitted that he did not keep any records as to the amounts paid to him by Southeast during 1999.

Discussion

In general, the determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to show that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[6]

A. Unreported Income

Gross income includes all income from whatever source derived. Sec. 61(a). Section 61(a)(1) specifically includes income derived from compensation for services, including fees, commissions, fringe benefits, and similar items. A taxpayer is required to maintain records sufficient to establish all items of income required to be shown on the taxpayer's tax return. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Per diem payments may be excluded from gross income if the requirements of section 1.162-17(b)(1), Income Tax Regs., are satisfied. See Baugh v. Commissioner, T.C. Memo. 1996-70. Section 1.162-17(b)(1), Income Tax Regs., provides:

---

[6] Because petitioners failed to introduce any credible evidence, they failed to meet the requirements of sec. 7491(a), as amended, so as to place the burden of proof on respondent with respect to any factual issue relevant to ascertaining liability for the tax deficiency in issue. Accordingly, petitioners bear the burden of proof.

> The employee need not report on his tax return (either itemized or in total amount) expenses for travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer for which he is required to account and does account to his employer and * * * for which the employee is paid through advances, reimbursements, or otherwise, provided the total amount of such advances, reimbursements, and charges is equal to such expenses * * *.

At trial, respondent called Mr. Ruess and Mr. Osburn as witnesses to corroborate the amount reported on the Form 1099 issued by Southeast to Mr. Fugitt for 1999. In addition to the testimony of these witnesses, records prepared and maintained by Southeast were introduced that detailed the sales made by Mr. Fugitt while employed by Southeast. Mr. Osburn maintained a contemporaneous record for Southeast at the time of each sale for purposes of determining Mr. Fugitt's sales commissions. A summary of Mr. Fugitt's sales commissions and per diem payments for 1999 was prepared by Mr. Osburn, which further supported the Form 1099 issued by Southeast.[7]

Mr. Fugitt did not keep, and thus did not produce, any records to prove his claims. He does not contend that he provided Southeast with receipts to account for his actual expenses incurred while at the RV shows. Mr. Fugitt has failed to present any credible evidence that the amount reported on the Form 1099 did not properly reflect income he earned while working

---

[7] This evidence would satisfy any burden of production that respondent may have had under sec. 6201(d).

for Southeast.  Mr. Fugitt only offered his unsupported and uncorroborated testimony.  We are not required to, and do not, accept Mr. Fugitt's self-serving testimony.  See <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986).

The testimony and records of Mr. Ruess and Mr. Osburn corroborate the Form 1099 issued by Southeast that Mr. Fugitt was paid total sales commissions and per diem payments in 1999 of $19,125.  Under section 61(a), the sales commissions portion of Mr. Fugitt's income must be included in petitioners' gross income.  Since Mr. Fugitt did not meet the requirements of section 1.162-17(b)(1), Income Tax Regs., the per diem portion must also be included in petitioners' gross income.  Thus, the Form 1099 issued to Mr. Fugitt reporting income of $19,125 correctly reflected income he earned as a salesman for Southeast during 1999.  Accordingly, we sustain respondent's determination and hold that petitioners failed to report self-employment income in the amount of $19,125.[8]

---

[8]  Petitioners are allowed a deduction of 50 percent of the meals expenses incurred by Mr. Fugitt while traveling away from home during 1999.  See secs. 162(a)(2), 274(n).  Mr. Fugitt, as a self-employed individual, may deduct an amount for meals expenses computed at the Federal Meals and Incidental Expenses (M&IE) rate for 1999 as an alternative to deducting the actual cost of meals incurred while traveling away from home.  See sec. 1.274-5T(j), Temporary Income Tax Regs., 50 Fed. Reg. 46032 (Nov. 6, 1985); Rev. Proc. 98-64, 1998-2 C.B. 825.  Given that the applicable Federal M&IE rate for 1999 is $30 per day, we hold that petitioners' deduction for Mr. Fugitt's meals expenses is limited to 50 percent of $3,180 ($30 per day x 106 days), or $1,590.  See 41 C.F.R. sec. 301, Appendix A (1998).

B.  Section 6662(a)[9]

The last issue for decision is whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for the year in issue.  As relevant herein, section 6662(a) imposes a penalty equal to 20-percent of any underpayment of tax that is due to a substantial understatement of income.  See sec. 6662(a) and (b)(2).  An individual substantially understates his or her income tax when the reported tax is understated by the greater of 10-percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  Tax is not understated to the extent that the treatment of the item related thereto is based on substantial authority or is adequately disclosed in the return or in a statement attached to the return and there is a reasonable basis for the tax treatment of such item by the taxpayer.  Sec. 6662(d)(2)(B).  In addition, no penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment.  Sec. 6664(c)(1).

Petitioners make no argument with regard to substantial authority or adequate disclosure, and we think that no such argument can be persuasively made.  Based on the record before

---

[9]  Respondent has satisfied his burden of production under sec. 7491(c) with respect to the accuracy-related penalty under sec. 6662(a) and (b)(1).  Sec. 7491(c); Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

us, we also conclude that petitioners had no reasonable cause for excluding from gross income the income earned by Mr. Fugitt from Southeast. Accordingly, we sustain respondent's determination that petitioners are liable for the accuracy-related penalty under section 6662(a) based on the understatement of income tax for 1999.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

under Rule 155.